UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GIUSEPPE MODICA,

               Plaintiff,

               v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

------------------------------------------------------------x

**MEMORANDUM & ORDER**
11-CV-1712 (MKB)

MARGO K. BRODIE, United States District Judge:

On April 7, 2011, Plaintiff Giuseppe Modica, proceeding *pro se*, filed the above-captioned complaint seeking review of the Commissioner of Social Security's decision that Plaintiff was not entitled to receive any benefits while he was incarcerated. Defendant then moved for judgment on the pleadings. The Court heard arguments by telephone on October 4, 2012. For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted.

**I.    Background**

Plaintiff began receiving disability insurance benefits in October 1974. (R. at 12, 50.) Plaintiff's wife, Josephine Modica, received benefits on Plaintiff's record through July 1990. *Id.* at 53. Plaintiff's three children also received benefits on his record, but those benefits ended in July 1992, when Plaintiff's youngest child turned 18. *Id.* at 12. On November 6, 1997, Plaintiff was convicted of a federal crime and incarcerated. *Id.* at 28. On January 28, 1998, Plaintiff received a letter from the Social Security Administration ("SSA"), informing Plaintiff that his benefits should have been stopped in November 1997 because he was "imprisoned for the

conviction of a crime that can carry a sentence of more than one year." *Id.* at 15. The letter informed Plaintiff that he had been overpaid $2,671.40 in disability benefits, which he would be required to repay, and that he could not receive any benefits, while he was incarcerated. *Id.* The letter also included the following language: "Even though your benefits will stop, we can pay other members of your family if they are entitled on your record." *Id.* The letter did not, however, inform Plaintiff that a vocational rehabilitation exception existed, whereby Plaintiff may have been able to receive benefits, if he participated in a court-approved program. On February 28, 1998, Plaintiff responded by letter and requested that all of his benefits be paid to his wife. *Id.* at 17. No payments were made to Plaintiff's wife. Plaintiff was released from prison on June 22, 2001. *Id.* The SSA resumed payment of benefits to Plaintiff in July 2001. *Id.* at 29.

On October 29, 2007, Plaintiff wrote the SSA to request information regarding the total amount of money that was withheld while he was incarcerated. *Id.* at 36. On December 24, 2007, the SSA informed Plaintiff that $42,071.60 had been withheld. *Id.* at 38. On May 28, 2008, Plaintiff filed a request for reconsideration regarding the suspension of his benefits while he was imprisoned. *Id.* at 41–43. In seeking reconsideration, Plaintiff cited the portion of the SSA's January 1998 letter, which stated that "we can pay other members of your family if they are entitled on your record" and argued that his wife should have received his benefits during his imprisonment. *Id.* at 42. On November 10, 2008, the SSA issued a decision, affirming the initial determination to suspend Plaintiff's benefits while he was incarcerated. *Id.* at 44–47. The decision did not address Plaintiff's specific argument regarding the language in the January 1998 letter.

On November 18, 2008, Plaintiff filed a request to appeal the SSA's decision based on new evidence. *Id.* at 48. Plaintiff attached the January 1998 letter and argued that the SSA had failed to consider the portion of the letter that stated "we can pay other members of your family if they are entitled on your record." *Id.* Plaintiff also resubmitted his February 1998 letter and affidavit. *Id.* at 48–49. On February 2, 2009, Plaintiff sent a letter to the SSA requesting "a copy of the statute and section that supports this statement from an earlier letter dated January 28, 1998 which reads: . . . Even though your benefits will stop, we can pay other members of your family if they are entitled on your record." *Id.* at 66. At some point, Plaintiff obtained counsel, Joanna Howorth. *Id.* at 69. Howorth wrote a letter to the SSA on February 20, 2009, requesting that the SSA review the denial of Plaintiff's benefits "as an act of charity." *Id.* Howorth further asked in the letter, if there was "any possible exception which would allow [Plaintiff] to receive the money he was denied[.]" *Id.*

The Administrative Law Judge ("ALJ") held a hearing on June 24, 2009. *Id.* at 11. Howorth failed to appear for the hearing.[1] *Id.* The ALJ informed Plaintiff of his right to have an attorney and that the hearing could be postponed until Plaintiff's lawyer could appear or Plaintiff found a different lawyer. *Id.* at 103–04. The ALJ also provided Plaintiff with the names of two organizations in Queens that could provide free lawyers, if Plaintiff could not afford to hire a new lawyer. *Id.* at 103. Plaintiff asked to have his hearing proceed as scheduled and waived his right to legal representation. *Id.* at 104. The ALJ asked Plaintiff questions regarding the basis of his appeal and explained why his benefits could not be transferred to his wife during his

---

[1] On July 27, 2009, Howorth sent a letter to the ALJ apologizing for her failure to appear at Plaintiff's hearing. (R. at 75.) Howorth claimed that she could not appear at the June 24 hearing because she "was not able to extricate [herself] from a bond proceeding in Immigration Court . . . [that] began on May 18th and continued until June 23rd." *Id.* Howorth did not provide any explanation for her tardy notice or for why she could not, having concluded the bond appearance in Boston on June 23, appear in New York for Plaintiff's hearing on June 24.

3

incarceration. *Id.* at 104–06. The ALJ did not ask Plaintiff any questions concerning his participation in rehabilitation programs, while he was in prison. The ALJ noted that Plaintiff's attorney had written to the court, describing Plaintiff's efforts to rehabilitate himself in prison but stated that these efforts had no bearing on the issue before the court. *Id.* at 107–08. The ALJ informed Plaintiff that if his counsel wished to submit a memorandum of law addressing the issue being raised in Plaintiff's appeal, the ALJ would review that memorandum prior to issuing a decision. *Id.* at 106–08.

On July 30, 2009, the ALJ issued a decision, denying Plaintiff's claim that he was entitled to receive benefits while incarcerated. *Id.* at 12. Although the Social Security regulations provide for a vocational rehabilitation exception, where a prisoner can continue receiving his or her benefits while incarcerated, the ALJ found that Plaintiff did not qualify under the exception. *Id.* First, the ALJ found that Plaintiff had not presented any evidence that he actually participated in any rehabilitative programs. *Id.* Second, the ALJ found that the programs mentioned by Plaintiff did not satisfy the requirement that the program be "expected to result in the claimant being able to engage in substantial gainful activity upon his release." *Id.* Finally, the ALJ found that, "[e]ven assuming that the claimant was participating in a rehabilitation program while incarcerated, there is no evidence that this program was, as required by the regulations, approved by any Court." *Id.* The ALJ also rejected Plaintiff's claim that his wife was entitled to receive his benefits based on the language in the January 1998 letter, stating that "we can pay other members of your family if they are entitled on your record." *Id.* at 13. The ALJ noted that this sentence "is 'stock language' which means that suspension of benefits would not affect others who were entitled to benefits." *Id.* The ALJ found that "[d]uring the period of incarceration no auxiliary benefits were payable to any of the claimant's family

incarceration. *Id.* at 104–06. The ALJ did not ask Plaintiff any questions concerning his participation in rehabilitation programs, while he was in prison. The ALJ noted that Plaintiff's attorney had written to the court, describing Plaintiff's efforts to rehabilitate himself in prison but stated that these efforts had no bearing on the issue before the court. *Id.* at 107–08. The ALJ informed Plaintiff that if his counsel wished to submit a memorandum of law addressing the issue being raised in Plaintiff's appeal, the ALJ would review that memorandum prior to issuing a decision. *Id.* at 106–08.

On July 30, 2009, the ALJ issued a decision, denying Plaintiff's claim that he was entitled to receive benefits while incarcerated. *Id.* at 12. Although the Social Security regulations provide for a vocational rehabilitation exception, where a prisoner can continue receiving his or her benefits while incarcerated, the ALJ found that Plaintiff did not qualify under the exception. *Id.* First, the ALJ found that Plaintiff had not presented any evidence that he actually participated in any rehabilitative programs. *Id.* Second, the ALJ found that the programs mentioned by Plaintiff did not satisfy the requirement that the program be "expected to result in the claimant being able to engage in substantial gainful activity upon his release." *Id.* Finally, the ALJ found that, "[e]ven assuming that the claimant was participating in a rehabilitation program while incarcerated, there is no evidence that this program was, as required by the regulations, approved by any Court." *Id.* The ALJ also rejected Plaintiff's claim that his wife was entitled to receive his benefits based on the language in the January 1998 letter, stating that "we can pay other members of your family if they are entitled on your record." *Id.* at 13. The ALJ noted that this sentence "is 'stock language' which means that suspension of benefits would not affect others who were entitled to benefits." *Id.* The ALJ found that "[d]uring the period of incarceration no auxiliary benefits were payable to any of the claimant's family

incarceration. *Id.* at 104–06. The ALJ did not ask Plaintiff any questions concerning his participation in rehabilitation programs, while he was in prison. The ALJ noted that Plaintiff's attorney had written to the court, describing Plaintiff's efforts to rehabilitate himself in prison but stated that these efforts had no bearing on the issue before the court. *Id.* at 107–08. The ALJ informed Plaintiff that if his counsel wished to submit a memorandum of law addressing the issue being raised in Plaintiff's appeal, the ALJ would review that memorandum prior to issuing a decision. *Id.* at 106–08.

On July 30, 2009, the ALJ issued a decision, denying Plaintiff's claim that he was entitled to receive benefits while incarcerated. *Id.* at 12. Although the Social Security regulations provide for a vocational rehabilitation exception, where a prisoner can continue receiving his or her benefits while incarcerated, the ALJ found that Plaintiff did not qualify under the exception. *Id.* First, the ALJ found that Plaintiff had not presented any evidence that he actually participated in any rehabilitative programs. *Id.* Second, the ALJ found that the programs mentioned by Plaintiff did not satisfy the requirement that the program be "expected to result in the claimant being able to engage in substantial gainful activity upon his release." *Id.* Finally, the ALJ found that, "[e]ven assuming that the claimant was participating in a rehabilitation program while incarcerated, there is no evidence that this program was, as required by the regulations, approved by any Court." *Id.* The ALJ also rejected Plaintiff's claim that his wife was entitled to receive his benefits based on the language in the January 1998 letter, stating that "we can pay other members of your family if they are entitled on your record." *Id.* at 13. The ALJ noted that this sentence "is 'stock language' which means that suspension of benefits would not affect others who were entitled to benefits." *Id.* The ALJ found that "[d]uring the period of incarceration no auxiliary benefits were payable to any of the claimant's family

members, his spouse included," and therefore the sentence relied on by Plaintiff was inapplicable. *Id.*

On August 19, 2009, Plaintiff filed a request for a review of the ALJ's decision. *Id.* at 72. Plaintiff noted in his request that he had conducted legal research and now understood that "[t]he law states that no monthly benefits could be paid while [he] was in jail, unless [he] had actively and satisfactorily participated in a rehabilitation/vocational program, approved by a Court of law." *Id.* Plaintiff explained that "[n]o one told me about this program, so therefore I was not instructed on how to sign up or the necessary steps for the approval. However, although I was not informed of this, I actually participated in a rehabilitation program." *Id.* On October 10, 2010, Plaintiff sent a follow-up letter to the SSA seeking review of the ALJ's decision. *Id.* at 84. Plaintiff provided a list of the rehabilitative programs that he participated in when he was incarcerated, and he requested a hearing in order to provide his "NYS Vocational Rehab certificates." *Id.* at 84–86. The Appeals Council denied Plaintiff's request to review the ALJ decision, noting that "[a]lthough you participated in various programs while incarcerated, you did not participate in vocational rehabilitation approved by court of law." *Id.* at 3–4. Plaintiff then filed the instant action.

## II. Discussion

### a. Standard of Review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence requires "more than a mere scintilla" but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citations and internal quotations omitted). In deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The Commissioner's factual findings "must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations and internal quotations omitted).

### b. Suspension of Benefits

The Social Security Act provides in relevant part that an individual cannot receive any benefits for a month during which the individual "is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense." 42 U.S.C. § 402(x)(1)(A)(i); 20 C.F.R. § 404.468. The Second Circuit has held that the "suspension of Social Security benefits during incarceration does not violate either due process or equal protection." *Langella v. Bush*, 161 F. App'x 140, 142 (2d Cir. 2005) (citing *Zipkin v. Heckler*, 790 F.2d 16, 19 (2d Cir. 1986)). However, a "vocational rehabilitation exception" exists, whereby "[t]he nonpayment provision . . . does not apply if a prisoner who is entitled to benefits on the basis of disability is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for the individual by court of law." 20 C.F.R. § 404.468(d).[2] The program must be "expected to result in the individual being able to do

---

[2] The vocational rehabilitation exception was previously included in the Social Security Act, as well as the regulations. *See* 42 U.S.C. § 402(x) (1994) (stating that the non-payment provision does not apply if the individual "is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law"). The vocational rehabilitation exception was eliminated from the Act by the 1994

6

substantial gainful activity upon release and within a reasonable time." *Id.* Furthermore, "[n]o benefits will be paid to the prisoner for any month prior to the approval of the program." *Id.*

Plaintiff does not dispute that he was incarcerated from November 1997 to June 2001 but argues that he was entitled to receive benefits under the vocational rehabilitation exception. (R. at 28, 72; Pl. Aff. Opp'n ¶ 4.) The Commissioner found that Plaintiff had failed to demonstrate that he participated in a program expected to result in the ability "to do substantial gainful activity upon release" or approved by a court. (R. at 12.) Plaintiff admits that he was very ill while he was incarcerated and, therefore, his participation in prison programs was limited. (Pl. Sept. 25, 2012 Letter at 1 ("As a result [of various medical conditions], I was not allowed to participate in various activities and programs which were offered to other inmates while in jail. I had several limitations so there was no way for me to participate in the programs which were required in order to collect my social security benefits while incarcerated.").) But he does offer evidence of 27 programs he participated in when he was incarcerated, including classes for gardening, drug abuse, history, basketball, parenting and other family issues. (R. at 86.) These programs, which predominantly involve health and family issues, are not programs expected to result in Plaintiff being able to obtain substantial gainful activity upon release. 20 C.F.R. § 404.468(d); *Loewe v. Barnhart*, No. 06 Civ. 4189, 2006 WL 3060132, at *2 (W.D. Mo. Oct. 25, 2006) (finding that plaintiff had not "set forth any facts which would lead the court to believe that these classes would overcome his disability and make him capable of employment upon release"); *Borchelt v. Apfel*, 25 F. Supp. 2d 1017, 1021 (E.D. Mo. 1998) ("Although the

---

amendments. Social Security Domestic Employment Reform Act of 1994, Pub. L. No. 103-387, § 4, 108 Stat. 4071, 4076; *see also Treece v. Wilson*, 212 F. App'x 948, 951 n.5 (11th Cir. 2007); *Butler v. Apfel*, 144 F.3d 622, 625 (9th Cir. 1998); *Buglier v. Social Sec. Admin.*, 124 F.3d 216, at *1 n.1 (10th Cir. 1997); *Rowden v. Warden*, 89 F.3d 536, 537 n.2 (8th Cir. 1996). Even though the Act no longer contains a vocational rehabilitation exception, the regulations still provide for the exception. *See* 20 C.F.R. § 404.468(d).

programs Plaintiff attended may have improved his life, enhanced his personal development, and demonstrated admirable efforts while incarcerated, they clearly were not designed to make Plaintiff employable upon release.").

Moreover, a rehabilitation program must be court approved in order to enable the claimant to continue receiving benefits while in prison. 20 C.F.R. § 404.468(d). Indeed, a claimant cannot receive benefits for "any month *prior* to the approval of the program." *Id.* (emphasis added); *see also Loewe*, 2006 WL 3060132, at *2 ("[T]he regulations do not permit benefit payments for months prior to approval of the program. . . . Loewe is seeking approval for a program previously completed." (citation omitted)); *Borchelt*, 25 F. Supp. 2d at 1021 (plaintiff was not entitled to receive his benefits where the "rehabilitation program was not approved by the sentencing court until *after* Plaintiff filed the present action" (emphasis in original)). Plaintiff concedes that the programs he participated in were not approved by any court, since Plaintiff did not even learn about the vocational exception until after he left prison.[3] (R. at 72, 86; Pl. Aff. Opp'n ¶¶ 4–5.) The Court recognizes that Plaintiff made productive use of his time while incarcerated, even though he faced serious health challenges. Nevertheless, Plaintiff did not participate in any rehabilitation programs that meet the requirements of the vocational rehabilitation exception. The Commissioner's decision that Plaintiff was not entitled to receive disability benefits while he was incarcerated is supported by substantial evidence.

### c. Plaintiff's Wife's Entitlement to Benefits

The ALJ also rejected Plaintiff's claim that based on the language in the January 1998 letter Plaintiff was entitled to transfer his benefits to his wife. (R. at 13.) The ALJ noted that

---

[3] Plaintiff was never told about the vocational rehabilitation exception, and the SSA did not inform Plaintiff of the exception when it notified him that his benefits would be withheld as a result of his incarceration. (R. at 15.)

this language "is 'stock language' which means that suspension of benefits would not affect others who were entitled to benefits." *Id.* That sentence is not applicable in Plaintiff's case because "[d]uring the period of incarceration no auxiliary benefits were payable to any of the claimant's family members, his spouse included." *Id.* The suspension of benefits "applies only to the prisoner; benefit payments to any other person who is entitled on the basis of the prisoner's wages and self-employment income are payables as though the prisoner were receiving benefits." 20 C.F.R. § 404.468(a). Accordingly, if Plaintiff's wife or his children were still receiving auxiliary benefits when he was imprisoned, his wife and children would have been entitled to continue receiving those benefits. However, Plaintiff's wife has not received benefits on his disability since 1990, and his children have not received benefits on his disability since 1992. (R. at 12, 53.) Plaintiff was not entitled to his own benefits while he was incarcerated, and therefore he had no benefits to transfer to his wife.

### III. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

SO ORDERED:

/S/ Judge Margo K. Brodie
_____
MARGO K. BRODIE
United States District Judge

Dated: October 19, 2012
      Brooklyn, New York

9